IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00630-SBP

CHADRACK EKENGE, *also known as Gilson Manuel*,

    Petitioner,

v.

JUAN BALTAZAR, *in his official capacity as Warden of the Denver Contract Detention Facility*; ROBERT HAGAN, *in his official capacity as Field Office Director, Denver Field Office of U.S. Immigration and Customs Enforcement*; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; KRISTI NOEM, *in her official capacity as Secretary of U.S. Department of Homeland Security*; and PAMELA BONDI, *in her official capacity as Attorney General of the United States*,

    Respondents.

**MEMORANDUM OPINION AND ORDER**

**Susan Prose, United States Magistrate Judge**

    Before the Court is Petitioner Chadrack Ekenge[1] ("Petitioner")'s Application for Writ of Habeas Corpus. ECF No. 1 ("Petition"). For the reasons outlined below, the court respectfully **GRANTS** the Petition.

    I.    **BACKGROUND**

    The following facts appear to be uncontested by the parties in relevant part except as otherwise reflected or stated below.

    Petitioner is a 31-year-old male citizen and national of the Democratic Republic of the

---

[1] Petitioner is also known as Gilson Manuel. Petition ¶ 1.

Congo[2] who states that he fled his home country to avoid persecution for his ethnicity and political beliefs. Petition ¶ 30. Respondent Juan Baltazar is the Warden of the Denver Contract Detention Facility and has immediate physical custody over Petitioner; he is sued in his official capacity. *Id*. ¶ 19. Respondent Robert Hagan is the Field Office Director of the U.S. Immigration and Customs Enforcement ("ICE") Denver field office and is sued in his official capacity. *Id*. ¶ 20. Respondent Todd Lyons is the Acting Director of ICE and is sued in his official capacity. *Id*. ¶ 21. Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security and is sued in her official capacity. *Id*. ¶ 22. Respondent Pamela Bondi (together with each other Respondent, "Respondents") is the Attorney General of the United States and is sued in her official capacity. *Id*. ¶ 23.

Petitioner entered the United States at Eagle Pass, Texas, without inspection on March 23, 2022, but was detained by Respondents shortly thereafter; he was released after two days and was instructed to report to Enforcement and Removal Operations in Colorado. *Id*. ¶ 31. He did so on April 4, 2022, and was issued a Notice to Appear and told to report to the Intensive Supervision Appearance Program ("ISAP") for supervision; he did this as well. *Id*. ¶ 32.

Respondents state that Petitioner was never inspected and admitted or paroled into the United States. ECF No. 9 at 2. Instead, Respondents allege that U.S. Customs and Border Protection ("CPB") determined that Petitioner is inadmissible to the United States. *Id.* Due to a lack of capacity, however, CBP paroled Petitioner from detention. *Id.* Petitioner was also enrolled in ICE's Alternatives to Detention ("ATD") program, which provides case management services

---

[2] Respondents state instead that Petitioner is a native and citizen of Angola. ECF No. 9 at 2. For the purpose of ruling upon the Petition, the court does not find this distinction to be relevant and accordingly refers to the nationality and place of origin stated by Petitioner.

and ensures compliance with ICE's reporting requirements for non-detained aliens. *Id.* at 3. ICE additionally conducted a custody redetermination and placed Petitioner on an Order of Release on Recognizance ("OREC") in conjunction with the ATD program. *Id*. at 3.

Respondents claim that both the ATD and OREC paperwork notified Petitioner that failure to comply with program requirements may result in arrest and detention. *Id.* Respondents additionally state that one of the program requirements is to complete all check-ins, including biometric check-ins. *Id.*

Since he entered the country, Petitioner claims that he has "dutifully complied with all immigration proceeding requirements," including taking a photo through the ISAP portal once per week, reporting in person to ISAP's office once every three weeks, and being present for scheduled home visits. Petition ¶ 33. Respondents dispute this, stating that Petitioner has violated the conditions of his release because he has missed eleven biometric check-ins that were required by his OREC, the most recent missed check-in being on December 1, 2025. Response at 3-4. Petitioner contests both that this requirement existed and that he failed to comply with any of his conditions of release. However, it appears to be undisputed that Petitioner has no criminal history. Petition ¶ 35. Petitioner also has a still-pending asylum application. *Id*. ¶ 37.

On January 15, 2026, Petitioner received a notification through his ISAP portal informing him that his office visit had been advanced from January 20, 2026, to January 16, 2026; he notes that he found this strange, as he says that he "had complied with all ISAP requirements and was simply waiting on his next notice of hearing." *Id*. ¶ 38. On January 16, 2026, Petitioner attended the scheduled office visit, but when Petitioner met with his case supervisor, she took him to a part of the building where ICE was waiting to arrest him. *Id*. ¶ 39. ICE arrested Petitioner, at

which point Petitioner asked why he was being arrested and if he could speak with his case manager. *Id*. ¶¶ 40-41. After approximately ten minutes, Petitioner's case manager came into the room where ICE was holding Petitioner and informed him that he had allegedly violated his supervisory requirements on eleven separate occasions. *Id*. ¶ 41. Petitioner states that he noted to his case manager that "he did not have an ankle monitor and ISAP's policy was to place an individual on an ankle monitor when [such] a violation has occurred," but she allegedly did not answer him and instead left the room. *Id*. ¶ 42. He claims that at the time of filing his Petition, he still had "no knowledge as to what the alleged [eleven] violations are." *Id*. ¶ 43.

Petitioner states that he was blindsided by what happened to him, noting that he had been very successful in complying with the requirements associated with his release and that his ISAP photo requirements had even been reduced from once per week to once per month. *Id*. ¶ 44. He claims that he never received written notice of the reason for his re-detention and never received a hearing before a neutral decisionmaker to determine if his re-detention was justified. *Id*. ¶¶ 45-46. He also notes that that "Respondents previously released Ekenge upon a determination that he was neither a flight risk nor danger to the community" sufficient to warrant detention. *Id*. ¶ 47.

On February 17, 2026, Petitioner filed the Petition with this court. On February 27, 2026, Respondents filed a response to the Petition. "Response," ECF No. 9. On March 4, 2026, Petitioner replied. "Reply," ECF No. 10.

## II.   ANALYSIS

District courts may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2241(c)(3). The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

**A. Applicability of 1226 and Scope of Petitioner's Argument**

As an initial matter, the court notes that this District has recently issued many rulings in habeas cases arising in similar contexts that have turned, at least in part, on the issue of whether mandatory detention pursuant to 8 U.S.C. § 1225 ("1225") or discretionary detention pursuant to 8 U.S.C. § 1226 ("1226") applied to the petitioners in those matters.

In this case, Petitioner raises no argument as to whether he is properly detained under 1225 or 1226. Nonetheless, the court notes, in passing, that there appears to be no real dispute that Petitioner is properly detained pursuant to 1226. In reaching this conclusion, the court notes that Petitioner was previously detained pursuant to an Order of Release on Recognizance (an "OREC"). "OREC forms are used for release under 8 U.S.C. § 1226," but seemingly cannot be used for release under 1225. *Abdulahi A.M. v. Bondi*, No. 26-cv-1018-DWF-DLM, 2026 WL 323523, at *1 (D. Minn. Feb. 6, 2026); *see, e.g.*, *Yaman v. Lyons*, No. 26-cv-00556-DC-SCR, 2026 WL 323060, at *4 (E.D. Cal. Feb. 6, 2026), *report and recommendation adopted*, 2026 WL 453565 ("The undersigned finds based on the undisputed [OREC], which was made under 8 U.S.C. § 1226(a), that the statutory authority governing petitioner's redetention is that same statute."); *Chicoze-Ezechi v. Noem*, No. 26-cv-145-BAT, 2026 WL 265733, at *1 (W.D. Wash. Feb. 2, 2026) (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) for the proposition that noncitizens released on an OREC must necessarily have been detained and released under 1226). And Respondents have offered no argument to the contrary, nor have they offered any indication or argument that even under their preferred version of events here, the

provision governing Petitioner's status would or could have changed.[3] Accordingly, for the reasons stated above, and since Petitioner was previously released pursuant to an OREC and since its revocation is the subject of this dispute, the court finds that Petitioner is properly detained pursuant to 1226.

The court also notes that Petitioner's arguments do not actually turn on this distinction. Regardless of whether Petitioner is detained under 1225 or 1226, Petitioner argues that his detention is improper because he was not provided with appropriate due process when his release on an OREC was revoked. In doing so, Petitioner appears to argue that whether he is subject to mandatory detention under 1225 or discretionary detention under 1226, in either case, Respondents have violated his due process rights by revoking his OREC status. *See, e.g.*, Reply at 4-6. The court agrees, at least to the extent that the court finds it ultimately need not rely upon its determination that 1226 applies to Petitioner to rule upon the Petition.[4]

### B. Jurisdiction

The court turns first to Petitioner's substantive due process claim.

Respondents first argue that "to the extent Petitioner challenges Respondents' discretionary decision to revoke his OREC, those claims should be dismissed for lack of

---

[3] The court notes that Respondents state that "Petitioner has not been deprived of any statutory right as he is properly detained under Section 1225(b)(2)(A) and he does not argue otherwise." Response at 9. However, Respondents do not otherwise elaborate upon this assertion and do not refer to any factual support for this proposition. Accordingly, the court does not find that Respondents have offered any argument beyond this bare statement in support of their assertion that 1225 applies to Petitioner.

[4] Accordingly, the court notes that the Fifth Circuit's recent decision and analysis in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), beyond having no binding effect on this court, is not relevant here, as the Fifth Circuit relied on its conclusion that the petitioners in that case were subject to mandatory detention in reaching its ruling.

jurisdiction." Response at 6. In support of this proposition, Respondents argue that this court does not have the jurisdiction to hear Petitioner's challenges to decisions made by the Attorney General reached within her discretion in this context. *Id*. at 4-6.

The court disagrees with Respondents. Petitioner's primary challenge here is clearly to the lack of due process underlying his detention, not merely the decision to revoke his detention. *See, e.g.*, Reply at 4. As Respondents acknowledge, Petitioner argues that he should have been provided with notice and an opportunity to be heard before his OREC status was revoked. *See* Response at 4. And as Respondents also acknowledge, a constitutional challenge to the *procedures* used in revoking parole may be heard by this court, *id*. at 5-6; this includes considerations regarding notice and the opportunity to be heard, procedural steps that Petitioner argues were not provided to him here. Accordingly, Petitioner's petition is not barred from review by this court.

### C. *Demore*

Respondents next argue that *Demore v. Kim*, 538 U.S. 510 (2003), stands for the proposition that Respondents may broadly detain deportable aliens during deportation proceedings without providing them with a pre-deprivation hearing. *Id*. at 6-8.

In resolving previous habeas petitions, this court has thoroughly analyzed and rejected highly similar arguments to Respondents' arguments here regarding *Demore*, and accordingly, the court refers the parties to the analyses set forth in those matters and incorporates them here. *See, e.g.*, *Merchan-Pacheo v. Noem*, No. 25-cv-03860-SBP, 2026 WL 88526, at *4-6 (D. Colo. Jan. 12, 2026) (noting, inter alia, that "[a]lthough *Demore* certainly makes it clear that detention during removal proceedings is permissible under certain circumstances . . . it does not follow that

7

*all* forms of detention of noncitizens during removal proceedings and all related procedures comport with due process"); *Arenas v. Noem*, No. 26-cv-00024-SBP, 2026 WL 317562, at *7 (D. Colo. Feb. 5, 2026); *see also Demore*, 538 U.S. at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Furthermore, even if Petitioner's status would once have permitted him to be detained without a hearing—or put another way, even presuming it were possible that Petitioner is properly detained pursuant to 1225 rather than 1226—it is undisputed that Petitioner was previously released on an OREC. This places him in a substantively different position than a "deportable alien" who had never gained release by the government pursuant to an OREC or some similar status, like the petitioners in *Demore*. "Even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); *see Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (same); *Pineda-Berrios v. Lyons*, No. 25-cv-2332-LMB-LRV, 2026 WL 384159, at *6 (E.D. Va. Feb. 11, 2026) (same); *Rojas v. Almodovar*, No. 25-cv-7189-LJL, 2025 WL 3034183, at *6 (S.D.N.Y. Oct. 30, 2025) (citing *Pinchi* and noting that "a liberty interest, once granted, cannot be revoked without due process" in finding that the due process rights of a petitioner who had had his parole status revoked were violated); *Savane v. Francis*, 801 F. Supp. 3d 483, 494 (S.D.N.Y. 2025) ("Other courts confronting the question of what process is required to revoke parole once granted, even when that revocation is discretionary, have held that a noncitizen has a significant liberty interest in

8

remaining out of custody once parole is granted.") (collecting cases); *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 709-10 (W.D. Tex. 2025) (finding that a prisoner released under an order of supervision possessed "a cognizable interest in his continued freedom from detention" and noting that in accordance with the longstanding principle in the criminal context that due process requires a pre-deprivation hearing before the revocation of parole, 1225(b) parolees acquire a protectable liberty interest in remaining out of custody on bond) (collecting cases). Accordingly, even if 1225 applied to Petitioner rather than 1226, Petitioner enjoys a due process interest in not being re-detained, as he was here.

### D. Arguments Regarding Lack of Deprivation of a Statutory Right and Lack of Prejudice

Respondents also argue that Petitioner cannot show that his due process rights have been violated here because to do so, he would need to show that he has been deprived of a statutory right, but he has not done so. Response at 8-9. This court has previously rejected a nearly identical argument raised under similar conditions and refers the parties to this analysis, which it incorporates here. *Arenas*, 2026 WL 317562 at *7; *see also, e.g.*, *Wong Wing v. United States,* 163 U.S. 228, 238 (1896) (the due process protections of the Fifth Amendment extend to "all persons within the territory of the United States . . . [and] even aliens shall not be . . . deprived of life, liberty, or property without due process of law"); *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

And the court also notes that "[w]hile Respondents are correct that non-citizens' liberty interests are not equivalent to those enjoyed by citizens . . . that does not negate Petitioner's liberty interest in not being detained." *Kumar v. Wamsley*, No. 25-cv-1772, 2025 WL 2677089, at

9

\*3 (W.D. Wash. 2025). The fact "[t]hat the express terms of the parole notice allowed for [ ] termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing prior to re-detaining the parolee." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Indeed, as alluded to above, in highly similar circumstances, other federal courts have held that "due process clearly requires that Petitioner be given a hearing before his bond is revoked." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1090 (E.D. Cal. 2025) (citing *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017)); *see, e.g.*, *Osorio Molina v. Hermosillo*, No. 26-cv-95-RAJ, 2026 WL 381161, at \*1 (W.D. Wash. Feb. 11, 2026) (releasing a petitioner who had his OREC revoked because he allegedly violated his reporting conditions by failing to report since his release where the petitioner was not provided with sufficient procedural due process).

Respondents also argue that "Petitioner has not shown any prejudice from any procedural violation." Response at 9. This is not the case; Petitioner has alleged that he was not provided with due process before his OREC was revoked and that he is now detained purely due to this failure. As addressed above, due process requires that Petitioner be given a hearing before his re-detention occurs. Relatedly, Respondents argue that Petitioner has not shown that he has been prejudiced by any due process violation, *id*. at 9-10, but this is not the case either; Respondents state that because it is within ICE's discretion to revoke Petitioner's release, he cannot argue that he has been prejudiced, but again, as addressed above, this revocation cannot occur without Respondents first providing Petitioner with notice and an opportunity to be heard, and based on the facts before it, the court agrees with Petitioner that there is no reason to believe that Petitioner would otherwise have been re-detained. Accordingly, Petitioner has clearly been prejudiced by revocation of his OREC status.

### E. *Mathews* Factors

Respondents do not otherwise argue that Petitioner has failed to sufficiently argue a due process violation here. However, Respondents do argue that it would not be appropriate to apply the three-factor test set forth in *Mathews v Eldridge*, 424 U.S. 319, 335 (1976), in analyzing Petitioner's due process claim, despite Petitioner's arguments raised in reliance on *Mathews*, because the Supreme Court has never applied *Mathews* in this context, again citing *Demore* in support of this proposition. Response at 11-12. Here, again, this court has previously addressed a nearly identical argument in detail elsewhere and disagrees with Respondents, referring the parties to and relying upon the reasoning provided within that prior ruling. *See Merchan-Pacheo*, 2026 WL 88526 at *4-6 (ultimately concluding that "the Supreme Court's holding in *Demore* is fully consistent with the application of the *Mathews* test"). Accordingly, the court turns to consider the *Mathews* test, which it finds is applicable to the circumstances at hand.

Pursuant to *Mathews*, courts weigh the following three factors in evaluating due process claims: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. In turning to analyze the *Mathews* factors, the court notes that Respondents, presumably because of their position that the *Mathews* factors should not be applied in this context, have offered no argument as to what the outcome of the court's due process analysis under *Mathews* should be.

The court first finds that Petitioner has a significant private liberty interest at stake.

Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025) (same); *see also Hamdi*, 542 U.S. at 529 (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention); *Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Petitioner is being held in an ICE detention facility far removed from any friends or family. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (finding, in assessing the first *Mathews* factor, that "[t]he deprivation [petitioner] experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours."). This is despite him not being accused of any crime. *See, e.g.*, *Maza v. Hyde*, No. 25-cv-12407-IT, 2025 WL 2951922, at *3 (D. Mass. Oct. 20, 2025).

The risk of erroneous deprivation is also considerable in this case. "[C]onsidering that petitioner 'was previously found to not be a danger or a flight risk, the risk of erroneous deprivation' is particularly high if, as is the case now, no hearing has been provided." *Arzate v. Andrews*, No. 25-cv-00942-KES-SKO, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025); *see also, e.g.*, *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest."). It appears to be undisputed that Petitioner was previously released after it was determined he was not a danger to the community or a flight risk. Petition ¶ 47. And the fact

"[t]hat the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Respondents have not effectuated the detention in such a manner here.

The court also finds that Respondents' interest in arresting and detaining Petitioner without a hearing is not substantial under the circumstances. "[T]he Government's interest in re-detaining non-citizens previously released without a hearing is low . . . [and any] costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.B.*, 795 F. Supp. 3d at 1324. Moreover, the public interest favors Petitioner rather than Respondents here. Unnecessary detention "imposes substantial societal costs," as it "separates families and removes from the community breadwinners, caregivers, parents, siblings and employees." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (quoting *Velasco Lopez*, 978 F.3d at 855). Petitioner has experienced these hardships; he has no criminal record, but he has nevertheless been arrested and has been held in detention separate from his broader community. The "ruptures in the fabric of communal life" wrought by unnecessary detention likewise support Petitioner's challenge to the automatic stay regulation. *Id*.; *see Sampiao v. Hyde*, 799 F. Supp. 3d 14, 34 (D. Mass. 2025) (reaching a similar conclusion). Thus, the court concludes that Respondents' interest here is minimal, especially in contrast to the significant countervailing interests at stake for the Petitioner.

Accordingly, the court finds that the *Mathews* factors each weigh heavily in favor of Petitioner's release.

### F. Appropriate Remedy

The court next turns to consider what an appropriate remedy would be under these circumstances. Respondents argue that even if Petitioner's due process rights have been violated, he would not be entitled to release because the proper remedy would instead be to provide Petitioner with the process he is entitled to. Response at 10-11. In turn, Petitioner offers no argument as to whether his immediate release is a more appropriate remedy than keeping him detained until he is provided with the process he claims he is entitled to, except to note cursorily in reply to Respondents' arguments that "[c]ourts routinely order release where detention was imposed without constitutionally adequate procedures" and that Petitioner "remains detained today solely because ICE unilaterally revoked his release without due process." Reply at 12.

The court notes that it has significant flexibility to craft an appropriate remedy under the circumstances alleged. "Federal district courts have broad equitable powers in ordering habeas relief." *Munoz Teran v. Bondi*, No. 25-cv-01218-KWR-SCY, 2026 WL 161527, at *6 (D.N.M. Jan. 21, 2026) (citing *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992)). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*." *Hilton v. Braunskill,* 481 U.S. 770, 775 (1987) (citation omitted). And in issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

The court observes that the language quoted by Respondents in support of their arguments here was crafted under very different circumstances. In *Olmedo v. United States Immigr. & Customs Enf't*, No. 25-cv-3159-JWL, 2025 WL 2821860 (D. Kan. Oct. 3, 2025), there was no dispute that petitioner had been removed from the United States no less than seven times

14

and that he had been arrested on state forgery charges; there was also no allegation that his due process rights had been violated, and the court merely concluded that Petitioner had been effectively denied custody review within the requisite timeframe before stating, as cited by Respondents, that "the appropriate remedy is to ensure that petitioner is afforded the process denied by the violation." *Id*. at *3. The court finds that the present circumstances are entirely different and do not necessarily justify reaching the same conclusion or applying a similar remedy. In *Bahadorani v. Bondi*, No. 25-cv-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025), in finding that the court would not be able to issue a writ of habeas corpus as an appropriate remedy because doing so would be "wasteful," the court stated that "[h]abeas relief is reserved for errors constitutional in scale" and that there was no dispute that the petitioner was "still removable and could promptly be served with a notice of revocation, detained, and provided a brief interview" before inevitably being removed. *Id*. at *4. This is far from the case here, particularly because there remains a question as to whether Petitioner's re-detention was justified. And in *Cruz Medina v. Noem*, 794 F. Supp. 3d 365 (D. Md. 2025), the court found only that the petitioner had "not pointed to authority showing that the remedy for a violation of th[e] regulation [at issue] . . . is release from detention," *id*. at 382; the court did not state or conclude that such authority did not exist or that such a remedy would never be available. Indeed, as addressed below, the court is aware of substantial authority ordering immediate release from custody for violations similar to the one alleged here.

      Furthermore, in a significant majority of cases that this court has been able to track down in which petitioners have had their OREC or similar status revoked without receiving due process and there is no indication that the petitioners violated the conditions of their release—

15

including many of the cases cited above—courts have ordered the petitioners' immediate release rather than continued detention pending bond hearings. *See, e.g.*, *Yaman*, 2026 WL 323060 at *5 (ordering petitioner's immediate release where there was "no evidence in the record that he violated any term of his release or that he has any criminal record"); *Abdulahi A.M.*, 2026 WL 323523 at *2 (ordering petitioner's immediate release while noting that the typical remedy in a habeas action is release); *Pineda-Berrios*, 2026 WL 384159 at *8 (ordering petitioner's immediate release); *Rojas*, 2025 WL 3034183 at *9 (same); *see also Pinchi*, 792 F. Supp. 3d at 1030 (upholding temporary restraining order under which the petitioner had already been released).

The court recognizes that in cases this court has uncovered in which there has specifically been a fact dispute as to whether a petitioner had violated the conditions of his release under an OREC or similar status, in certain instances, courts have ordered expedited bond hearings instead of immediate release. *See, e.g.*, *Martinez Hernandez v. Andrews*, No. 25-cv-1035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (ordering petitioner's continued detention pending a "timely" bond hearing where "there is a dispute of fact as to whether Petitioner repeatedly violated the terms of his parole") (collecting cases). However, other courts have found that under those circumstances, releasing a petitioner immediately remains the appropriate approach, at least where no evidence has been provided that the petitioner violated the conditions of his release pursuant to an OREC or similar status, where little or no evidence has been provided in support of respondents' claims as to what the petitioner's conditions of release are, or where there is some argument or indication that respondents' reference to such a violation may be pretextual. *See, e.g.*, *Chicoze-Ezechi*, 2026 WL 265733 at *2-3 (stating that "a post-

16

deprivation bond hearing is an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty."); *E.A. T.B.*, 795 F. Supp. 3d at 1322.

Here, Respondents have offered a declaration from a deportation officer familiar with Petitioner's case who has averred that Petitioner missed eleven of his scheduled biometric check-ins and that these check-ins were part of his conditions of release. *See* ECF No. 9-1 at 3-4. On the other hand, Petitioner contests the assertions raised in the declaration and does not concede either that biometric check-ins were part of the conditions of his release or that Petitioner failed to meet any of his conditions of release. Petitioner also argues that this reason for Petitioner's detention may be pretextual, as though Respondents claim that Petitioner missed ten biometric check-ins in 2024 and only one in 2025, Petitioner was not re-detained until 2026. Reply at 5-6. Petitioner notes that "[i]f the alleged 2024 reporting violations truly demonstrated that [Petitioner] posed a flight risk or otherwise justified detention, ICE would logically have increased supervision or revoked release at that time." *Id*. at 6.

Outside of the deportation officer's declaration, which provides no detail as to how or why the check-ins were part of Petitioner's conditions of release and does not address how the attesting officer became aware of these alleged violations, Respondents provide no evidence or documentation that might suggest either that the check-ins were part of Petitioner's conditions of release or that Petitioner missed these check-ins. And as Petitioner points out, if Petitioner's missed check-ins were truly an issue, Respondents logically should have acted to re-detain Petitioner long ago; this greatly increases the likelihood that the stated reason for Petitioner's re-detention was pretextual. Furthermore, the court notes there is no suggestion here that Petitioner

17

presents a flight risk and finds it significant that releasing Petitioner would merely return matters to the status quo before Petitioner was re-detained without being provided with due process. *Cf. Ramirez Tesara*, 800 F. Supp. 3d at 1138 (noting in a similar context that "[t]he Court finds that Petitioner's request for immediate release is necessary to restore the status quo <u>ante litem</u>," or the last uncontested status which preceded the pending controversy) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Accordingly, although acknowledging that these circumstances present a somewhat close call, the court finds that under the broad discretion granted to it here, Petitioner should be immediately released.

### G.  Applicable Standard for Any Future Pre-Deprivation Hearing

Finally, Petitioner states that "at any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence." Respondents do not oppose this assertion. The court finds broad support for this proposition across courts nationwide and, in the absence of any opposition from Respondents, agrees with Petitioner. *See, e.g.*, *Trejo*, 807 F. Supp. 3d at 712 ("The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government" to prove their case by clear and convincing evidence); *Velasco Lopez*, 978 F.3d at 856 n.14 (2d Cir. 2020) (collecting cases). Accordingly, if Respondents ultimately do hold an immigration court hearing to determine whether Petitioner's detention is appropriate, Respondents must carry their burden by clear and convincing evidence.

The court therefore concludes that pursuant to Petitioner's procedural due process claim, Petitioner is entitled to the relief he requests in his Petition. Accordingly, the court need not reach

Petitioner's substantive due process claim.

### H. Request for Costs and Fees

Regarding Petitioner's request for costs and fees, "the Court notes that under Local Rule 54.3, a motion for attorney fees shall be supported by affidavit. Therefore, Petitioner may file a motion for attorney fees that complies with the applicable rules." *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1187 (D. Colo. 2024) (cleaned up) (citations omitted); *see also, e.g.*, *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *9 n.8 (D. Colo. Oct. 22, 2025) (holding the same).

### CONCLUSION

For the foregoing reasons, the court respectfully **GRANTS** Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, and orders Respondents to release Petitioner from detention within one day of the date of this Order. Respondents shall file a status report in order to certify compliance within five days of the date of this Order.

Additionally, Respondents are enjoined from re-detaining Petitioner absent providing Petitioner with written notice and a hearing prior to re-detention. If Respondents do seek to re-detain Petitioner, at this pre-detention hearing, Respondents will bear the burden of proof by clear and convincing evidence that Petitioner's re-detention is warranted.

DATED: March 5, 2026                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

19